IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGENE DYKES : CIVIL ACTION
:
v. :
:
THE MARCO GROUP, INC. and :
EDUCATION AFFILIATES, INC. : NO. 15-1088

## MEMORANDUM

**Padova, J.**                                      **November 28, 2016**

Plaintiff Eugene Dykes filed this employment discrimination action against Defendants The Marco Group, Inc. and Educations Affiliates, Inc. after he was terminated from his job as a welding instructor.   He asserts claims of race discrimination, retaliation, and hostile work environment pursuant to Title VII, 42 U.S.C § 1981, and the Pennsylvania Human Relations Act. Defendants have filed a Motion for Summary Judgment, seeking judgment in their favor on all of Plaintiff's claims.   For the following reasons, we grant the Motion in its entirety.

## I.     BACKGROUND

Plaintiff Eugene Dykes is an African-American male.   (Compl. ¶ 8.)   In March of 2013, Plaintiff obtained a job as a welding instructor at the Lester, Pennsylvania location of All-State Career Schools ("All-State").   (Defs.' Stip. of Facts ¶¶ 1-2; Certification of Robert Bubb ("Bubb Cert.") ¶ 13; Defs.' Ex. F.).   All-State is a network of trade schools that offers accredited programs in commercial driving and welding.   (Defs.' Stip. of Facts ¶ 1.)   It is a subsidiary of Defendant The Marco Group, Inc., which is, in turn, a subsidiary of Defendant Education Affiliates, Inc.   (Id.)

All-State's records reflect that, not long after Plaintiff was hired, there were problems reported in Plaintiff's classroom.   The first incident was in April of 2013, when Plaintiff publicly

confronted a student with a disciplinary write-up during a class and the student stormed out of Plaintiff's classroom.   (See Defs.' Ex. H.)   Then, in May of 2013, one of Plaintiff's students reported to Mr. Robert Bubb, Plaintiff's direct supervisor, that Plaintiff was not providing enough lecturing in conjunction with the assigned chapter reading and also seemed to favor some students over others.   (See Defs.' Ex. I; David Poli Dep. Tr. ("Poli Dep."), attached as Ex. D to Defs.' Mem., at 26.)   Also in May, another student submitted a formal complaint that, inter alia, Plaintiff did not have control of his classroom, did not discuss the homework assignments and chapter readings, and played favorites.   (See Defs.' Ex. J.)   As a result of the formal complaint, Mr. Bubb conducted interviews with the students in Plaintiff's classes.   (See Defs.' Exs. K- L.)   Mr. Bubb reported that the students did not express unhappiness with the class, but also seemed guarded in their remarks.   (Id.)   Thereafter, Mr. Bubb conducted a meeting with Plaintiff and the student who had submitted the complaint, during which the three discussed the student's complaints and agreed to implement procedures to resolve any future issues.   (See Defs.' Ex. M.)

On May 28, 2013, Mr. Bubb noted that Plaintiff did not arrive for his 6:30 class until 7:00 p.m., and Plaintiff explained his lateness and failure to call the school by stating that he "had some legal shit to take care of."   (Defs.' Ex. R.)   The next day, All-State's Director of Career Services reported that Plaintiff had been speaking negatively to students about a potential employer of All-State's students.   (See Defs.' Exs. S and U.)   Plaintiff denied having made negative comments to the students, but proceeded to criticize the same employer to All-State staff and, as a result, was issued a final disciplinary warning and directed to refrain from talking about any employers in a negative way in the future.   (See Defs.' Exs. S, T, and U.)

Also in late May, Mr. Bubb engaged an outside consultant to evaluate both Plaintiff's teaching performance and the performance of a Caucasian welding instructor about whom he also

had concerns.   (Robert Bubb Dep. Tr. ("Bubb Dep."), attached as Ex. C to Defs.' Mem., at 57-58, 63-65.)   The outside consultant, Steve Fultz, prepared a report concerning his observations of Plaintiff's class on May 30, 2013.   (Id. at 59; Defs.' Ex. Q.)   Mr. Fultz reported that Plaintiff was "never on topic" and that the students were "not on task and were talking with each other in general conversation throughout the class."   (Defs.' Ex. Q.)   He reported that "[s]everal times [he] attempted to move the class along by asking . . . topic questions pertaining to the curriculum area it appeared [Plaintiff] was training in" and that Plaintiff's "answers were very short and incorrect." (Id.)   He further wrote that, upon observing students welding, he found "that the technique [Plaintiff] ha[d] been showing them was incorrect."   (Id.)   Specifically, he noted that "[t]he students . . . had the wrong electrode angle, wrong machine setting, and were going in the wrong direction with the welds."   (Id.)   Mr. Fultz ultimately opined that Plaintiff "does not know enough about welding to be a welding instructor," and that he "lacks both [the] practical skills and knowledge of welding theory to teach welding."   (Id.)   He further opined that Plaintiff was "very negative" and "was not helping any of the student learn how to weld."   (Id.)

Issues with Plaintiff's performance as a welding instructor continued in June and July of 2013.   On June 6, 2013, Plaintiff covered a class for another instructor and did not clean the welding lab properly at the conclusion of class.   (See Defs.' Ex. V.)   On June 12, 2013, Mr. Bubb observed at 6:55 p.m. that Plaintiff had not yet started his 6:30 p.m. class.   (See Defs.' Ex. W.) Also, on June 12, 2013, Mr. Bubb ran a reference check for Plaintiff and discovered that a number of prior employers listed on Plaintiff's resume had no record of employing Plaintiff.   (See Defs.' Ex. Y- Z.)   On June 21, 2013, Plaintiff permitted his class to leave an hour and a half early to watch the NBA final game.   (See Defs.' Ex. BB.)   On June 26, 2013, all of Plaintiff's students again left class early and Plaintiff told Mr. Bubb that he simply couldn't make them stay.   (See

Defs.' Ex. EE.)   On July 2, 2013, Plaintiff advised the school that two of his students could not take a test, because they did not have the textbook from which he had been teaching for over a month and were therefore unprepared.   (See Defs.' Ex. FF.)   Mr. Bubb faulted Plaintiff for this situation as he stated that it is the instructor's responsibility to make sure his students have books. (Id.)

According to Plaintiff, in early July, he "brought some information" to Susan Boekencamp, All-State's registrar, and when he was walking away, she said "[W]e don't like your kind here anyway."[1]   (Pl.'s Dep. at 383-85.)   Plaintiff met with Mr. Poli on July 2, and, according to Plaintiff's deposition testimony, he complained to Mr. Poli about that statement as well as unspecified racially discriminatory treatment by Mr. Bubb.[2]   (Id. at 401-02; see also Defs.' Ex. FF (reflecting that Plaintiff met with Mr. Poli on July 2).)

On July 16, 2013, Plaintiff advised Mr. Bubb that he had encountered a problem with his class the night before because only five of ten students showed up for class and those five refused to take the test that Plaintiff had scheduled for that day.   (See Defs.' Ex. II.)   That same day, a student who had recently transferred into Plaintiff's class complained to David Poli, All Star's Director of Education, that Plaintiff's class was "total chaos," that students came and went without restriction, and that Plaintiff did not teach but, rather, talked on his phone, slept, and flirted with a commercial driving student during "one of the many breaks."   (Defs.' Ex. JJ; see also Poli Dep. at 39-40.)   The student also reported that Plaintiff complained to the class that the school was "screwing him" by shorting him on his paycheck every week.   (Defs.' Ex. JJ.)   Later that day,

---

[1]   At her deposition, Ms. Boekencamp denied having made this comment.   (Susan Boekencamp Depos. Tr., attached as Ex. E to Defs.' Mem., at 18.)

[2]   Mr. Poli, on the other hand, testified at his deposition that Plaintiff never complained about racial discrimination, Mr. Bubb, or Ms. Boekencamp.   (Poli Dep. at 28.)

and the next day as well, Plaintiff complained to Laurie Wallace, All-State's Director of Administration, that he was being shorted on overtime pay.   (See Defs.' Ex. KK.)

Mr. Poli subsequently advised Plaintiff that he was terminated.  (Poli Dep. at 44.)   In a letter dated August 21, 2013, Mr. Bubb confirmed that Plaintiff was "no longer employed as a Welding Instructor at All-State."  (Defs.' Ex. LL.)   The letter noted that "the termination was effective 7/22/2013" and that Plaintiff had been "informed of the termination by Mr. David Poli the Director of Education."   (Id.; see also Poli Dep. at 44.)   The letter went on to explain:

> Over the time you were employed as an Instructor we had a number of discussions concerning your duties and specifically the way you were conducting your classes and interactions with the students in those classes.   Your failure to begin classes on time, to administer tests and in general to control the students under your supervision were all topics of our discussions.   After an evaluation of the overall situation, you were terminated.

(Defs.' Ex. LL.)   Mr. Bubb further testified at his deposition that Plaintiff was terminated because he did not efficiently manage his duties as a welding instructor and "had many problems as a result of dealing with students and . . . following the rules and regulations for teaching."   (Bubb Dep. at 13-14.)

Plaintiff filed his Complaint in this Court on March 11, 2016.   The Complaint contains three Counts, each of which asserts claims of race discrimination, retaliation, and hostile work environment.   Count I seeks relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.   Count II seeks relief pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981.   Count III seeks relief pursuant the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 et seq.   Defendants seek summary judgment in their favor on all three Counts.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a).   An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."   Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986).   A

factual dispute is "material" if it "might affect the outcome of the suit under the governing law."

Id.   In ruling on a summary judgment motion, we consider "the facts and draw all reasonable

inferences in the light most favorable to . . . the party who oppose[s] summary judgment."

Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372,

378 (2007)).   If a reasonable fact finder could find in the nonmovant's favor, summary judgment

may not be granted.   Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002)

(citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).   Where the nonmoving party bears the burden of proof on a particular

issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district

court" that "there is an absence of evidence to support the nonmoving party's case."   Id. at 325.

After the moving party has met its initial burden, the adverse party's response "must support the

assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the

record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the

absence . . . of a genuine dispute."   Fed. R. Civ. P. 56(c)(1).   Summary judgment is appropriate if

the nonmoving party fails to respond with a factual showing "sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at

trial."   Celotex, 477 U.S. at 322.   "'While the evidence that the non-moving party presents may

6

be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'"   Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)).

## III.   DISCUSSION

Plaintiff brings his discrimination claims pursuant to Title VII, § 1981, and the PHRA. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e–2(a)(1).   The PHRA similarly makes it unlawful for any employer to discharge or otherwise discriminate against an employee based on that employee's "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . ."   43 Pa. Stat. Ann. § 955(a).   Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . ," and has been construed to forbid all racial discrimination in the making of both private and public contracts.   42 U.S.C. § 1981(a); Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) (citing Runyon v. McCrary, 427 U.S. 160, 168 (1976)).

We apply the same standard when analyzing discrimination claims brought pursuant to Title VII, the PHRA and Section 1981.   See Verma v. Univ. of Pa., Civ. A. No. 11–611, 2012 WL 1835727, at *7 (E.D. Pa. May 18, 2012) ("Discrimination claims under the PHRA are subject to the same standards as Title VII for purposes of summary judgment." (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999))); see also id. ("Race discrimination claims under § 1981 are also treated 'virtually identical[ly]' to Title VII discrimination claims at the summary judgment stage." (alteration in original) (quoting Langley v. Merck & Co., Inc., 186 F. App'x 258, 261 n.2

(3d Cir. 2006))).   As noted above, Plaintiff's claims fall into three groups: (1) a claim of discrimination based on his race; (2) a hostile work environment claim based on Plaintiff's race; and (3) a claim that he was fired in retaliation for his complaints of race discrimination.

### A.    Race Discrimination

Plaintiff claims that Defendants discriminated against him in violation of Title VII, Section 1981 and the PHRA because they terminated his employment on the basis of his race.   The parties agree that Plaintiff does not have direct evidence of discrimination and that his discrimination claim should therefore be analyzed pursuant to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   "Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of unlawful discrimination or retaliation."   Dellapenna v. Tredyffrin/Easttown Sch. Dist., 449 F. App'x 209, 213 (3d Cir. 2011) (citing McDonnell Douglas, 411 U.S. at 802).   In order to demonstrate a prima facie case of discrimination, Plaintiff must establish that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to . . . retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."   Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citations omitted).

Defendants argue that they are entitled to summary judgment in their favor on Plaintiff's race discrimination claims because Plaintiff has not met his initial burden of demonstrating a prima facie case of discrimination.   See Dellapenna, 449 F. App'x at 213.   For purposes of their Motion, Defendants do not dispute that Plaintiff can establish that he is a member of a protected class and that he suffered an adverse employment action insofar as he was discharged from employment.   They argue, however, that he cannot establish either that he was qualified for the position or that the circumstances of his job loss give rise to an inference of discrimination.

### 1.   Qualifications

Defendants argue that the undisputed evidence in the summary judgment record demonstrates that Plaintiff was not objectively qualified to be a welding instructor and that his hiring "was, simply put, a grievous mistake."  (Defs.' Mem at 12.)  Specifically, they note that the undisputed evidence reflects that the position of Technical Instructor at All-State requires a "[m]inimum of 3 years of significant program related/industry experience," and they assert that Plaintiff has not submitted competent record evidence of such experience.  (Pl.'s Ex. C at D-0039.)

Plaintiff accepts that the qualifications for a welding instructor include three years of significant experience, but he maintains that there is record evidence that he had such experience and that he has therefore satisfied that aspect of his prima facie case.   In support of this assertion, he points to (1) his own testimony that he worked as a welder at BFI, Inc. for approximately three years, from 2002 to 2005 (Pl.'s Dep. at 151-52; see also Defs.' Ex. X at D-0028); (2) documentary evidence that he worked for approximately one month as a contract welder for CTR, Inc. in the summer of 2012 (Pl.'s Ex G at CTR005 (reflecting job classification as "fitter/welder"); id. at CTR0023 (showing hours worked between January 2012 and December 2015); (3) documentary evidence that, between February of 2012 and May of 2015, he worked a total of approximately three to four months doing contract work as a flat welder for Tradesmen International (Pl.'s Ex. F at TRADESMEN0001, TRADESMEN0004-TRADESMEN0008; Pl.'s Dep. at 49-51); (4) his own testimony that he was a junior welding instructor at Airco Technical Institute when he was a student there in the early 1980s (Pl.'s Dep. at 151-52); and (5) his testimony that he worked

"off-the-books" as a welder for K&M Fabrication for seven months in 2011 and 2012 (Pl.'s Dep. at 79-81, 83).[3]

There is, however, no corroborating evidence of Plaintiff's employment at BFI, Inc. Moreover, Plaintiff's Social Security records do not reflect significant wages from <u>any</u> employer from 2002 through 2005, much less any wages from a company called BFI, Inc.   (Pl.'s Ex. D at SSA0539 (reflecting no income in 2002 or 2005, and just $495.19 in wages in 2003, and $1,412.00 in wages in 2004).)   We therefore conclude that no reasonable jury could credit his testimony that he accumulated three years of welding experience with BFI, Inc. from 2002 to 2005.[4] Furthermore, there is no evidence to corroborate Plaintiff's testimony that, almost thirty-five years ago, in the early 1980's, he worked as junior welding instructor, and there is no evidence indicating the duration of that purported employment.   We therefore conclude that no reasonable jury would consider Plaintiff's purported experience as a junior welding instructor when determining whether Plaintiff had the requisite three years of significant welding experience.

---

[3] There is also testimony in the record that Plaintiff had his own construction company, GHR Services, which he formed in 1990, but Plaintiff describes its services as "drywall, painting, cement work, stucco, [and] framing," with no mention of welding.   (Pl.'s Dep. at 66-69.)

[4] Generally, "'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'"   <u>Gonzalez v. Sec'y of the Dep't of Homeland Sec.</u>, 678 F.3d 254, 263 (3d Cir. 2012) (quoting <u>Kirleis v. Dickie, McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 161 (3d Cir. 2009)).   This rule has been extended to self-serving deposition testimony.   <u>Irving v. Chester Water Auth.</u>, 439 F. App'x 125, 127 (3d Cir. 2011).   The ultimate question is whether Plaintiff's testimony, when considered in conjunction with other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, in spite of the testimony's self-serving nature.   <u>See</u> <u>Gonzalez</u>, 678 F.3d at 263 ("[T]his is a case where the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit [plaintiff's testimony]." (quotation omitted)); <u>see also</u> <u>Irving</u>, 439 F. App'x at 127 ("In light of both his earlier testimony and other record evidence, [plaintiff's] self-serving deposition testimony is insufficient to raise a genuine issue of material fact.").   Here, in light of the evidence that contradicts Plaintiff's self-serving testimony regarding his employment at BFI, Inc., we conclude that no rational factfinder would credit that testimony.

Under these circumstances, the evidence in the summary judgment record only arguably supports the conclusion that Plaintiff had a total of one year's experience as a welder, which he gained at CTR, Inc. (one month), Tradesmen International (four months), and K&M Fabrication (seven months).   Plaintiff has therefore failed to point to evidence that would support a reasonable inference that he had the requisite three years of experience as a welder.   Accordingly, we conclude that he has failed to meet his summary judgment burden of making a factual showing sufficient to establish the second prong of his prima facie case for race discrimination, i.e., that he was qualified for the welding instructor position.   See Celotex, 477 U.S. at 322; Makky, 541 F.3d at 214.

### 2.   Inference of Discrimination

Defendants also argue that Plaintiff cannot meet the fourth prong of his prima facie case, because there is no evidence in the summary judgment record to support a reasonable conclusion that Plaintiff was discharged under circumstances that are suggestive of racial discrimination. Makky, 541 F.3d at 214 (requiring plaintiff to establish that the adverse action "occurred under circumstances that could give rise to an inference of intentional discrimination" (citations omitted)).   Plaintiff counters that there is, in fact, record evidence that gives rise to an inference of racial discrimination because there is (1) evidence that a similarly situated individual outside of his protected class was treated more favorably than he was, and (2) other evidence regarding the circumstances of his termination from which an inference of racial discrimination can be drawn.

### a.   Similarly Situated Individual

With respect to his first argument, Plaintiff contends that the Caucasian welding instructor ("Instructor #2") who Mr. Fultz evaluated at the same time that he evaluated Plaintiff was treated more favorably than he was because Mr. Fultz did not produce a written report about Instructor #2,

and because Defendants did not fire Instructor #2 until five months after they fired Plaintiff.   (See Bubb Dep. at 61-64.)   Plaintiff maintains that he and Instructor #2 were similarly situated because they were both welding instructors and they engaged in similar purported misconduct.

A plaintiff can establish an inference of discrimination by offering evidence demonstrating that a similarly situated employee, not of the plaintiff's protected class, was treated more favorably than plaintiff.   Viscomi v. Corizon Corr. Healthcare, Civ. A. No. 14-5759, 2015 WL 4770589, at *3 (E.D. Pa. Aug. 12, 2015) (citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998)).   "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'"   Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222–23 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).   This means that "purported comparators must have committed offenses of 'comparable seriousness.'"   Id. at 223 (quoting Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006)).   Factors we may consider are whether "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"   Id. (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)), and citing Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003)).

Here, there is little record evidence regarding Instructor #2's conduct.   Mr. Bubb testified that he engaged Mr. Fultz "to actually monitor, not only [Plaintiff,] but another instructor who was there at the time to observe his classes and make any evaluation of how they were doing."   (Bubb Dep. at 58.)   He explicitly testified that he did not have "the same kind of concerns" about Instructor #2 as he did about Plaintiff, clarifying that his concerns about Instructor #2 were "[m]ore absence and more following curriculum, but not as many of the same kinds of concerns."

(Id.)   Mr. Bubb testified that Mr. Fultz gave him an oral report regarding the other instructor, but did not provide a written report because, like Mr. Bubb, Mr. Fultz "was just more concerned about [Plaintiff]."   (Id. at 62.)   Ultimately, Mr. Bubb testified, he terminated the other instructor in November of 2013 for reasons having to do with the instructor's failure to follow the curriculum and absenteeism.   (Id. at 58-60.)   He explained that he came to the conclusion to terminate Instructor #2 after hiring a "welding chairperson" who began running the welding department, did write-ups on the instructor, and reported his observations to Mr. Bubb.   (Id. at 64.)   In the end, Mr. Bubb submitted a "request for termination based upon a number of incidents that [Instructor #2] was involved in."   (Id.)

Based on this evidence and the dearth of other relevant evidence, we conclude that no factfinder could reasonably conclude that Plaintiff and Instructor #2 were similarly situated. While the two had the same supervisor (Mr. Bubb) and were apparently subject to the same standards, the evidence simply does not support a conclusion that they "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."   Opsatnik, 335 F. App'x at 223 (quotation omitted).   Indeed, there is no evidence in the record that there were student complaints about Instructor #2, that Instructor #2 favored certain students over others, or that Instructor #2 exhibited difficulties controlling his classroom as Plaintiff did.   Moreover, while the record suggests that Instructor #2, like Plaintiff, was often tardy and had difficulty following the curriculum, there is no basis on which a factfinder could conclude that Instructor #2's problems in that regard were of the same magnitude as Plaintiff's.   To the contrary, Mr. Bubb specifically testified that he "did not have as many of the same kind of concerns" about that instructor as he did about Plaintiff, and that even Mr. Fultz "was just more concerned about [Plaintiff]."   (Bubb Dep. at 58-59, 62.)   Accordingly,

we conclude that Plaintiff has failed to point to evidence from which a reasonable factfinder could find that Plaintiff and Instructor #2 were similarly situated, such that Plaintiff could establish an inference of discrimination by establishing that Instructor #2 was treated more favorably.

### b.    Circumstances of Plaintiff's Termination

Plaintiff also argues that there is other evidence in the summary judgment record of the circumstances of his termination from which the requisite inference of intentional racial discrimination can be drawn.   Specifically, he contends that a factfinder could reasonably infer racial discrimination from: (1) "the racial comments made to [him] and Defendants' refusal to appropriately address it;" (2) the "proximity in time between [his] complaints to Mr. Poli and his termination," and (3) Defendants' failure to put the reasons for [his] termination in writing until approximately one month after his termination."   (Pl.s' Mem. at 8.)

Plaintiff does not elaborate on these particular arguments, making it difficult to discern the precise evidence on which he relies.   The summary judgment record contains evidence of only two statements by All-State representatives that Plaintiff appears to contend are racially discriminatory: (1) Ms. Boekenkamp's comment that "we don't like your kind here anyway" (Pl.'s Dep. at 383-85); and (2) statements by Steve McClain, another welding instructor, that certain welding materials were "not for [Plaintiff]" and that Plaintiff "can't touch that."   (Pl.'s Dep. at 232, 387-89.)   Plaintiff contends that Defendants did not "appropriately address" the racial comments, but the record contains evidence only that Plaintiff complained to Mr. Poli about Ms. Boekenkamp's comment; there is no evidence that he also complained about Mr. McClain's statements.   (Pl.'s Mem. at 8; Pl.'s Dep. at 401-02.)   There is some record support for a conclusion that Plaintiff's employment was terminated three weeks after he lodged a complaint with Mr. Poli – namely Plaintiff's testimony that he complained to Mr. Poli (Pl.'s Dep. at 401-02);

records indicating that he met with Mr. Poli on July 2, 2013 (Defs.' Ex. FF); and record evidence that he was terminated as of July 22, 2013 (Defs.' Ex. LL).   The record also reflects that Mr. Bubb sent a letter, setting forth the reasons for the termination approximately one month later, on August 21, 2013.   (Defs.' Ex. LL.)

This limited evidence, however, simply does not support a reasonable inference that Plaintiff's termination was motivated by intentional racial discrimination.   As an initial matter, there is nothing even arguably racial in Mr. McClain's comments that certain welding materials were "not for" Plaintiff, and that Plaintiff should not touch them.   While Ms. Boekenkamp's comment that "we don't like your kind" is less obviously innocuous, we nevertheless conclude that no reasonable juror could attach a racial meaning to that comment in the absence of any other evidence regarding the context in which that comment was made or other evidence that Ms. Boekenkamp harbored any racial prejudice.   Moreover, even assuming for the sake of argument that Ms. Boekenkamp's comment was racially motivated, it does not give rise to any inference that Plaintiff's <u>termination</u> was racially motivated because there is no evidence that Ms. Boekenkamp was involved in the decision to terminate Plaintiff's employment.   Finally, the mere facts that Plaintiff was fired shortly after he lodged a complaint about Ms. Boekenkamp's comment and other purported racial discrimination, and that he was not given a written explanation for the termination until one month later, simply do not raise a reasonable inference that Defendants' decision to terminate him was due to intentional racial discrimination.   Under these circumstances, we conclude that Plaintiff has identified no evidence to support an inference that his termination occurred under circumstances that give rise to an inference of racial discrimination.

We therefore conclude that Plaintiff has failed to satisfy his initial burden of establishing a prima facie case of racial discrimination not only because he has failed to point to evidence that supports a conclusion that he was qualified for the welding instructor position, but also because he has failed to point to evidence that could support a reasonable inference that his termination was racially motivated.   Consequently, on both of these bases, we grant Defendants' Motion for Summary Judgment as to Plaintiff's race discrimination claims, and we enter judgment in Defendants' favor on these claims.[5]

## B.      Hostile Work Environment

Plaintiff claims that Defendants violated Title VII, Section 1981, and the PHRA because they subjected him to a racially hostile work environment.   To prove a racially hostile work environment claim, a plaintiff must establish that (1) he suffered intentional discrimination, (2) "the discrimination was severe or pervasive," (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would have affected a reasonable person in the same position, and (5) "there is a basis for employer liability."   Hanzer v. Mentor Network, 610 F. App'x 121, 126 (3d Cir. 2015) (citation omitted); see also Griffin v. Harrisburg Prop. Servs., Inc., 421 F. App'x

---

[5] We further note that, even if Plaintiff had established a prima facie case of racial discrimination, Defendants have articulated, and marshaled substantial evidence, that they had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment – essentially that Plaintiff performed poorly as a welding instructor and acted unprofessionally in that role.   See supra Section I; Dellapena, 449 F. App'x at 213 (stating that once a plaintiff establishes a prima facie case of discrimination, "'the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision.'" (quoting McDonnell Douglas, 411 U.S. at 802)).   Given that Defendants have met that burden of production, Plaintiff has the burden to show that Defendants' reason is pretextual by "'point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"   Burton v. Teleflex, Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).   Plaintiff has not done so in this case.   Accordingly, this is yet another basis on which we could grant summary judgment in Defendants' favor on Plaintiff's race discrimination claim.

204, 207 n.3 (3d Cir. 2011) ("The elements of a racially hostile work environment are the same

under Title VII and § 1981." (citations omitted))).   "A hostile work environment exists when the

'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment.'"   Boyer v. Johnson Matthey, Inc., Civ. A. No. 02-8382, 2005 WL 35893,

at *12 (E.D. Pa. Jan. 6, 2005) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116

(2002)).   In assessing whether workplace discrimination is sufficiently severe or pervasive to

support a hostile work environment claim, we consider "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."

Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998) (quotation omitted). "[S]imple

teasing, offhand comments, and isolated incidents (unless extremely serious)" do not alone give

rise to a hostile work environment.   Id. at 788 (quotation omitted).

Defendants argue that we should enter summary judgment in their favor on Plaintiff's

hostile work environment claims because the record contains no evidence to support such claims.

Plaintiff argues, in response, that there is sufficient record evidence to support his claim that he

was subjected to "severe and pervasive" intentional discrimination because there is evidence that

there were "numerous racially hostile comments directed at him."   (Pl.'s Mem. at 8 n.5.)

However, again, he appears to rely on evidence of just two particular comments by All-State

employees: (1) Ms. Boekenkamp's comment that "[W]e don't like your kind here anyway" (Pl.'s

Dep. at 383); and (2) the comment by Mr. McClain, a Caucasian welding instructor, in response to

a question from Plaintiff regarding certain "material[] coming out of the shop," that "That's not for

you.   You can't touch that."   (Pl.'s Dep. at 232, 387-89).[6]

As stated above, however, these two comments cannot support a claim of intentional racial

discrimination, and they certainly do not give rise to a reasonable inference of severe and or

pervasive discrimination.   Plaintiff does not point to evidence that anyone physically threatened

or humiliated him or that the comments at issue affected his work performance.   Moreover, the

law in this Circuit is that "'[m]ere offensive utterances' are insufficient to create a hostile

environment, even if they engender offensive feelings in an employee." Greer v. Mondelez

Global, Inc., 590 F. App'x 170, 173 (3d Cir. 2014) (quoting Clark Cty. Sch. Dist. v. Breeden, 532

U.S. 268, 271 (2001), and citing Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005)).

Accordingly, even viewing the evidence in the light most favorable to Plaintiff, we conclude that

the two comments do not show that that Plaintiff suffered intentional discrimination or that

Plaintiff's "workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive

working environment." Peace–Wickham v. Walls, 409 F. App'x 512, 519 (3d Cir. 2010)

---

[6] Plaintiff may also be attempting to base his hostile work environment claim on an incident in which a student called him a "nigger" while "running out the door," presumably of Plaintiff's classroom.   (Pl.'s Dep. at 386.)   However, "[t]he basis of an employer's liability for hostile environment . . . depends on whether the harasser is the victim's supervisor . . . ." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).   Where, as here, the alleged harassment is not by a supervisor, "the employer is not automatically liable."   Id. (citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)).   Rather, because Plaintiff contends that a student comment created a hostile work environment, "employer liability . . . exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."   Id.   Plaintiff neither argues nor points to record evidence from which a factfinder could conclude that Defendants knew or should have known about the student's comment or that Defendants provided him with no reasonable avenue for complaint. Accordingly, we conclude that he cannot rest his hostile work environment claim on evidence of the student's comment.

(quoting Morgan, 536 U.S. at 116).   While the statements may have been unwelcome and personally offensive to Plaintiff, and may even have been unprofessional, they are not suggestive of a racial animus, and simply "are not the type of severe and pervasive conduct necessary to constitute a hostile work environment."   Greer, 590 F. App'x at 174.   We conclude, accordingly, that Plaintiff has failed to come forward with evidence that could support a claim that Defendants subjected him to a racially hostile work environment in violation of Title VII, Section 1981, and the PHRA.   We therefore grant Defendants' Motion for Summary Judgment as to Plaintiff's hostile work environment claims and enter judgment in Defendants' favor on those claims.

### C.   Retaliation

Plaintiff claims that Defendants violated Title VII, Section 1981, and the PHRA by retaliating against him for complaining to Mr. Poli regarding both Ms. Boekenkamp's comment and the fact that Mr. Bubb was discriminating against him on the basis of race.[7]   (See Pl.'s Dep. at 401-402.)   To establish a prima facie case of retaliation, a plaintiff must identify evidence that (1) he engaged in protected activity, (2) "the employer took an adverse employment action against [him]," and (3) "there was a causal connection between [his] participation in the protected activity and the adverse employment action."   Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).   To establish protected activity, the plaintiff must establish that he "opposed conduct that a reasonable person could believe violated Title VII's standard for unlawful discrimination." Id. at 344; see also id. ("[R]etaliation plaintiffs must 'act[ ] under a good faith, reasonable belief that a violation existed'" (quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d

---

[7] Plaintiff also asserts in his "Concise Statement of Facts" that he complained, more generally, about differential treatment that he was receiving on the basis of his race, but the only citation to the record that he provides in connection with that assertion does not actually support it. (Pl.'s Statement of Facts ¶ 28.)   Accordingly, we do not consider that factually unsupported assertion in assessing the viability of his retaliation claim.

Cir. 1996))) (second alteration in original).   In other words, "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."   Theriault v. Dollar Gen., 336 F. App'x 172, 174 (3d Cir. 2009) (citing Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008)).

Defendants argue, inter alia, that Plaintiff's claimed complaint to Mr. Poli did not constitute "protected activity" under established standards.   Plaintiff counters that he has adequately established that he engaged in protected activity because he believed that the conduct about which he complained was a violation of the anti-discrimination laws.   However, as noted above, a complaint about discrimination is only protected activity if a "reasonable person" could believe that "the incident[s] complained about constituted unlawful discrimination."   Theriault, 336 F. App'x at 174 (citation omitted).

Here, Plaintiff has testified that he complained to Mr. Poli about Ms. Boekencamp's statement that "[W]e don't like your kind" and that Mr. Bubb was discriminating against him on the basis of race.   (Pl.'s Dep. at 401-02.)   However, as explained in greater detail above, no reasonable juror could conclude that Ms. Boekencamp's statement, which is not obviously racial, violated Title VII's prohibitions on discrimination.   Breeden, 532 U.S. at 271 ("No reasonable person could have believed that the single incident recounted above violated Title VII's standard."); Theriault, 336 F. App'x at 174 (stating that plaintiff "did not engage in protected activity because she complained only of a single incident that no reasonable person could have believed violated Title VII." (citation omitted))   In addition, there is no evidence in the record from which a reasonable person could conclude that Mr. Bubb engaged in conduct that discriminated against Plaintiff on the basis of his race.   Indeed, when Plaintiff was asked at his

deposition to elaborate on why he believed that Mr. Bubb was discriminating against him based on his race, he merely replied, "Why else would I be fired?"   (Pl.'s Dep. at 403.)

Under these circumstances, we conclude that Plaintiff has failed to identify evidence from which a factfinder could conclude that his complaint to Mr. Poli constituted protected activity, and we therefore conclude that Plaintiff has failed to establish a prima facie case of retaliation. Consequently, we grant Defendants' Motion insofar as it seeks summary judgment in Defendants' favor on Plaintiffs' retaliation claims, and we enter judgment in Defendants' favor on those claims.

## IV.    CONCLUSION

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment in its entirety and enter judgment in favor of Defendants and against Plaintiff.   An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova, J.
_____
John R. Padova, J.

21